Howard E. Powell v. Commissioner.
Powell v. Commissioner
Docket No. 21806.
United States Tax Court
1951 Tax Ct. Memo LEXIS 83; 10 T.C.M. (CCH) 928; T.C.M. (RIA) 51301; September 28, 1951
Howard E. Powell, pro se. Geo. E. Gibson, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined a deficiency of $1,544.19 in petitioner's income tax for the year 1943. The sole question presented is whether petitioner was a bona fide resident of Canada during the entire year of 1943, and hence income earned there by him in that year was exempt from taxation under the provisions of section 116 (a) (1) of the Internal Revenue Code. Findings of Fact Petitioner is an individual, born in Alvin, Illinois, and since June 1944 has been a resident of Denver, Colorado. He filed his income tax return for the calendar year 1943 on March 14, 1944, with the *84 collector of internal revenue for the district of Colorado and reported therein that his total income for 1943 was $7,219.65, and that all of same was earned in Canada, where he was a resident for the entire year, and for which reason no part of his income for that year was taxable. Tax liability was stated to be "None". Respondent's letter to petitioner dated November 30, 1948, advised of respondent's determination of a deficiency of $1,544.19 based upon his holding that petitioner in 1943 "was not a bona fide resident of a foreign country as contemplated by section 116 (a) (1)" of the Code, and hence his income was not exempt from taxation. Petitioner resided in Canada throughout the entire year of 1943 and rendered personal service entirely in Canada and received as compensation therefor the sum of $7,219.65, which was his total income from all sources for that year. Petitioner's age in 1943 was 42 years, and his family consisted of a wife and one sixteen year old daughter. He owned no real estate. In 1942 petitioner worked as a laborer and truck driver in several states in the United States and had no fixed place of residence. On December 26, 1942, while petitioner was *85 in Minneapolis, Minnesota, he signed a contract with Bechtel-Price-Callahan, a joint venture with headquarters in San Francisco, California, to work in Canada as a truck driver on the Canol Pipe Line project for a period of nine months. In pursuance of this contract petitioner arrived in Edmonton, Alberta, Canada, at the end of December, 1942, and at once began and continued to work on the Canol project as a truck driver. In September, 1943, his written contract of employment expired, whereupon his employer, as contracted, offered petitioner transportation to the United States, which he declined, stating then as his reason for so doing that he "was going to remain permanently in Canada." Throughout the remainder of 1943 and until February 1944 he worked for the same employer on the same project, under an oral contract, as expeditor. He resided principally in Edmonton during his employment with Bechtel-Price-Callahan; his wife lived with him there from June 1943 to March 1944 in a rented apartment. He did not own a home there or elsewhere. Upon going to Canada he took with him all of his personal effects, including his automobile. His daughter did not go to Canada, but lived with *86 her grandparents in Alvin, Illinois. On February 12, 1944, petitioner, upon application theretofore made by him, "was granted permanent admission to Canada" by the "Immigration Branch" of the Canadian Government. In February, 1944, when petitioner was laid off by Bechtel-Price-Callahan, he registered for the Canadian Selective Service and with the Canadian Unemployment Service, and on February 12, 1944, the Canadian Unemployment Insurance Commission issued to petitioner an identification card, showing that he was "registered at this office for employment as mechanic." Thereafter he was employed for about two months by Peter Kiewit Sons for whom he worked as a truck driver at Fort St. John, British Columbia in Canada, which is about 600 miles from Edmonton. In March 1944 while still residing in Canada, petitioner made a ten day trip to Denver, Colorado, and while there filed his income tax return. His wife accompanied him on this trip, but did not return to Canada with him, since his work at that time was in "the wilderness" far removed from any town, and it was her intention to rejoin him in Canada later when his work permitted him to live in or near a town. Petitioner and *87 his wife both liked to live in Canada and prior to 1943 had lived there together for extended periods, once in the 1920's and again in the 1930's. Upon returning from his Denver visit, petitioner continued to live and work in Canada. Other work done by him there, in addition to that mentioned, included trading - that is, buying and selling furs. He had made arrangement with another party to go into the fur business on a rather extensive scale, but his prospective partner was drafted into the armed forces and the plan had to be abandoned. In June, 1944, petitioner, being unable to find what he deemed suitable employment, returned to the United States and has since been a resident of Denver, Colorado. Petitioner paid no income tax to the Canadian Government. Petitioner was a bona fide resident of Canada during the entire taxable year 1943. Amounts received by petitioner in 1943 as compensation for personal services rendered in Canada were not paid to him by the United States or any agency thereof. Such amounts were received from sources without the United States and would have constituted earned income as defined in section 25 (a) of the Internal Revenue Code *88 (as in effect for the year 1943) had they been received from sources within the United States. Opinion Section 116 (a) (1) of the Internal Revenue Code exempts from taxation earned income from sources without the United States. In substance this section provides for tax exemption, viz: In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States * * * if such amounts constitute earned income as defined in paragraph (3); * * *. It being undisputed that all of petitioner's income for 1943 was from sources without the United States and that all of it was earned income within the meaning of the law, and that he was physically present in Canada, a foreign country, during the entire taxable year, there remains only to be determined whether petitioner has shown by the evidence that he was a bona fide resident of Canada during the entire year of 1943. This we think petitioner has done and we have so found as an ultimate fact. We shall not review the evidence *89 upon which this finding is based. Suffice it to say we think the record as a whole amply sustains our finding. Cases involving this issue are necessarily factual and in each the intention of the party must be determined from the facts and no two cases are identically alike, hence we deem it unnecessary to compare the facts here with other cases involving this issue. However, the facts here do closely resemble those in Chas. F. Bouldin, 8 T.C. 959, a Court reviewed case where we held for the taxpayer. In one respect at least the facts here are stronger for the petitioner than those in the Bouldin case. We refer to petitioner's action in registering with the Canadian Government his intention to remain permanently in Canada, and taking the necessary legal steps not only to do so, but to secure for himself the rights accruing to the unemployed under Canadian law. We think there is no merit in respondent's contention that because this was not done until February 1944, it sheds no light upon his intention in 1943. It is strong corroborative evidence of petitioner's intention, expressed in 1943, when he declined to accept transportation to the United States from his employer *90 because he had decided to remain permanently in Canada. Decision will be entered for the petitioner.